**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**Wheeling**

**UNITED STATES OF AMERICA**,

Plaintiff,

v. **Criminal No. 5:15-CR-36**
Judge Bailey

**MICHAEL J. MARSHALL**, **BRANDT STOVER**, **STEPHEN M. POWELL**, and **NICHOLE P. NORTHCRAFT**,

Defendants.

**ORDER DENYING DEFENDANT STOVER AND MARSHALL'S**
**EMERGENCY MOTION TO MODIFY THE EX PARTE RESTRAINING ORDER**

Pending before this Court is Defendant Stover and Marshal's (sic) Emergency Motion to Modify the Ex Parte Restraining Orders [Doc. 32], filed June 24, 2015. The Government responded with its United States' Response to Emergency Motion to Modify the Ex Parte Restraining Orders on June 29, 2015 [Doc. 41]. On June 30, 2015, the movants filed Defendant Stover and Marshal's (sic) Reply to Government's Opposition to Emergency Motion to Modify the *Ex Parte* Restraining Orders [Doc. 51]. On July 1, the Government filed its United States' Surreply to Defendant Stover and Marshall's Reply to Government's Opposition to Emergency Motion to Modify the *Ex Parte* Restraining Orders [Doc. 53].

Defendants Brandt Stover and Michael Marshall were indicted on June 2, 2015, with various offenses, including conspiracy to defraud the United States in relation to the

minority Small Business and Capital Ownership Development program; conspiracy to commit wire fraud; wire fraud; conspiracy to defraud the Government with respect to claims; and willfully causing the submission of false, fictitious and fraudulent claims; tampering with a witness [Doc. 1] The indictment also includes forfeiture allegations.

On June 4, 2015, this Court issued an Order Restraining Business Assets Subject to Forfeiture, which order affected numerous assets including six accounts in Huntington National Bank.[1]

---

[1] The accounts in question are:

1. All funds contained in Huntington National Bank account ending in 93449, held in the name of Eastern Construction & Excavating, and identified as (BA1) in the Indictment's Forfeiture Allegation and as (a) in Court's Order Restraining Business Assets Subject to Forfeiture [Doc. 8];

2. All funds contained in Huntington National Bank account ending in 93737, held in the name of Eastern Construction & Excavating, and identified as (BA2) in the Indictment's Forfeiture Allegation and as (b) in Court's Order Restraining Business Assets Subject to Forfeiture [Doc. 8];

3. All funds contained in Huntington National Bank account ending in 93740, held in the name of Eastern Construction & Excavating, and identified as (BA3) in the Indictment's Forfeiture Allegation and as (c) in Court's Order Restraining Business Assets Subject to Forfeiture [Doc. 8];

4. All funds contained in Huntington National Bank account ending in 93753, held in the name of Eastern Construction & Excavating, and identified as (BA4) in the Indictment's Forfeiture Allegation and as (d) in Court's Order Restraining Business Assets Subject to Forfeiture [Doc. 8];

5. All funds contained in Huntington National Bank account ending in 16693, held in the name of Eastern Construction & Excavating, and identified as (BA5) in the Indictment's Forfeiture Allegation and as (e) in Court's Order Restraining Business Assets Subject to Forfeiture [Doc. 8];

6. All funds contained in Huntington National Bank account ending in 62868, held in the name of Lexington Real Estate, LLC, and identified as (BA7) in the Indictment's Forfeiture Allegation and as (a) in Court's Order Restraining Business Assets

In their motion, defendants Stover and Marshall contend that the restraining order should be modified to exclude the accounts listed above for the following reasons:

1. The above accounts were all opened at a Huntington National Bank branch in Steubenville, Ohio. The accounts are substitute assets, and the United States Court of Appeals for the Sixth Circuit prohibits restraint of substitute assets within the boundaries of its jurisdiction;

2. The restraint of these assets has left the two defendants indigent and incapable of paying their counsel of choice.

The defendants seek an order releasing the six accounts from the restraining order, or a hearing under ***United States v. Farmer***, 274 F.3d 800 (4th Cir. 2001).

**Validity of the Restraining Order**

In ***United States v. Park***, 825 F.Supp.2d 644 (D.Md. 2011), Judge Benson Legg set forth an excellent synopsis of the law concerning the restraint of assets. With a nod to Judge Legg, I will plagiarize at length:

> Title 21, Section 853(e)(1)(A) authorizes the pre-trial restraint of assets subject to forfeiture upon the filing of an indictment or information.[2] In the Fourth Circuit, this provision applies equally to property directly traceable to the alleged offense and to substitute assets. *See* ***In re Billman**,* 915 F.2d 916, 920 (4th Cir. 1990).
>
> The Government's motion for the restraining order may be made *ex*

---

Subject to Forfeiture [Doc. 12].

[2] The procedures relating to criminal forfeiture in 21 U.S.C. § 853 are made applicable to all criminal forfeiture cases by 28 U.S.C. § 2461(c).

*parte. See* ***United States v. E–Gold, Ltd.,*** 521 F.3d 411, 417 (D.C. Cir. 2008) (agreeing with ***Monsanto*** that no pre-restraint hearing is required); ***United States v. Holy Land Foundation for Relief and Development,*** 493 F.3d 469, 475 (5th Cir. 2007) (*en banc*); ***United States v. Monsanto,*** 924 F.2d 1186, 1192–92 (2d Cir. 1991) (*en banc*). The criteria for granting a defendant *a post-restraint* hearing to seek modification of the restraining order are set forth in ***United States v. Farmer,*** 274 F.3d 800, 804–05 (4th Cir. 2001) (defendant entitled to pretrial hearing if property is seized for civil forfeiture if he demonstrates that he has no other assets available with which to retain counsel, and defendant makes a prima facie showing that the restrained property is not subject to forfeiture).

The standard for issuing a restraining order is probable cause. ***United States v. Monsanto,*** 491 U.S. 600, 615–16 (1989). In issuing a restraining order, the court may rely on the finding of probable cause made by the grand jury in returning the indictment. *See* ***United States v. Bollin,*** 264 F.3d 391, 421 (4th Cir. 2001) (the grand jury's finding of probable cause is sufficient to satisfy the Government's burden); ***In re Billman,*** 915 F.2d 916, 919 (4th Cir. 1990) (same); ***United States v. Adams,*** 782 F.Supp.2d 229 (N.D. W.Va. 2011) (the court may rely on the grand jury's finding of probable cause in determining the amount of money the defendant will be ordered to repatriate under § 853(e)(4)); ***United States v. Wingerter,*** 369 F.Supp.2d 799, 806 n. 10 (E.D. Va. 2005) (the listing of the property in the forfeiture allegation in the

indictment reflects the grand jury's finding of probable cause regarding the forfeitability of the property; the restraining order may be issued based on the showing of probable cause alone; there is no need to show, as there is for pre-indictment orders, that the property is likely to disappear).

Once the Government has made the required probable cause showing, the entry of a pre-trial restraining order is mandatory with respect to both the directly forfeitable property and any substitute assets. *See* ***United States v. Monsanto**,* 491 U.S. 600, 612–13 (1989) (the word "may" in section 853(e) means only that the district court may enter a restraining order if the Government requests it, but not otherwise, and that it is not required to enter the order if a bond or other means exists to preserve the property; it "cannot sensibly be construed to give district court[s] discretion to permit the dissipation of the very property that section 853(a) requires to be forfeited upon conviction"); ***United States v. Wingerter**,* 369 F.Supp.2d 799, 811 (E.D. Va. 2005) ("there is no discretion to permit a defendant to spend assets that are subject to forfeiture, including substitute assets. They must be preserved for forfeiture."); ***United States v. Amoruso**,* 2009 WL 1037917 (N.D. W.Va. Mar. 30, 2009) (following ***Monsanto*** and ***Wingerter**;* issuance of a pre-trial restraining order is mandatory; the court's only discretion relates to the manner of the restraint; in the Fourth Circuit, this applies to substitute assets).

Property in which a third party has an interest may be subject to pre-

> trial restraint so that the Government's forfeitable interest in the property may be preserved. *See* ***United States v. Bailey****,* 419 F.3d 1208, 1218 (11th Cir. 2005) (noting that the Government is not without remedy when the forfeitable property is in the hands of a third party: it can request a pretrial restraining order)
>
> . . .
>
> Pursuant to Section 853(l), the court in the district where a criminal indictment is pending may issue an order restraining property located in any other district. *Cf.* ***United States v. Brown****,* 2011 WL 1344177, *1 (D.Md. Feb. 28, 2011) (§ 853(l) authorizes the court to restrain substitute assets located in another district pursuant to § 853(g) after the defendant has been convicted).

825 F.Supp.2d at 646-648.

The above cited statute, § 853(l) provides that "[t]he district courts of the United States shall have jurisdiction to enter orders as provided in this section without regard to the location of any property which may be subject to forfeiture under this section or which has been ordered forfeited under this section.

This Court notes that the Sixth Circuit has held that federal prosecutors may not restrain substitute assets prior to trial. ***United States v. Parrett***, 530 F.3d 422 (6th Cir. 2008). In fact, the Fourth Circuit is the only circuit to have considered the issue and found that prosecutors may restrain substitute assets prior to trial. *See* ***United States v. Jarvis,*** 499 F.3d 1196, 1204 (10th Cir. 2007) ("the United States does not have a ripened interest

in ... substitute property until (1) after a defendant's conviction and (2) the court determines the [tainted] property is out of the government's reach for a reason enumerated in [the statute].”); ***United States v. Field**,* 62 F.3d 246, 249 (8th Cir. 1995) (refusing to permit pretrial restraint of substitute assets under § 853(e)(1)); ***United States v. Ripinsky**,* 20 F.3d 359, 363–64 (9th Cir. 1994) (same); ***United States v. Gotti**,* 155 F.3d 144, 148–50 (2d Cir. 1998) (refusing to permit retrial restraint of substitute assets under 18 U.S.C. § 1963); ***In re Assets of Martin**,* 1 F.3d 1351, 1359 (3d Cir. 1993) (same).

In fact, the Fourth Circuit has noted the disagreement of other circuit courts of appeals. In an unpublished opinion, ***United States v. Bromwell**,* 222 Fed.Appx. 307, 311 n. 2 (4th Cir. 2007), a panel of the Fourth Circuit declined to stray from ***Billman**,* noting as follows: “***Billman*** was the first case in the courts of appeals to address pretrial restraint of substitute property, and we are aware that our position has not been followed by other circuits. . .. We, of course, must follow ***Billman**,* which was decided by a distinguished panel that included retired Justice Powell.”

The resolution of this issue depends upon a determination of which circuit’s law governs the validity of the restraining order with respect to the assets in question. The defendants argue that “the Sixth Circuit . . . expressly prohibits seizure of substitute assets before conviction within its boundaries.” No citation is provided for this statement.

This Court views ***Parrett*** as holding that the Federal statute did not authorize prosecutors to restrain substitute assets prior to trial. In fact, the Sixth Circuit appears to countenance such a seizure if authorized under state law.

In an effort to demonstrate that Sixth Circuit law should prevail, the defendants cite

***United States v. Gates***, 2008 WL 5382285 (D. Maine Dec. 19, 2008) and ***United States v. Restrepo***, 890 F.Supp. 180 (E.D. N.Y. 1995). These cases dealt with the validity of a search conducted in another jurisdiction and held that it was unfair to judge the actions of the officers in conducting the searches by any standard other than the jurisdiction in which they serve and conducted the search. This Court finds these cases to be wholly distinguishable, since this case does not deal with the actions of an officer in another jurisdiction.

Rather this Court finds that the validity of the restraining order should be judged under the law of this Circuit, even with regard to assets held in another circuit.[3] As noted above, § 853(l) provides that "[t]he district courts of the United States shall have jurisdiction to enter orders as provided in this section without regard to the location of any property which may be subject to forfeiture under this section or which has been ordered forfeited under this section." This Court finds this statute to be determinative of the issue.

In fact, the issue might not even exist. Despite the fact that the Government contended in its Declaration in Support of Motions for Restraining Orders that the accounts in question were substitute assets [Doc. 7-2, p. 15 and Doc. 11-2, p. 15], the Government now contends that these accounts are proceeds of the allegedly illegal activity. The Government now contends that:

> (1) The indictment does not specify that the accounts are merely substitute assets; (2) The Government's evidence will show that in its first year of operation, almost 100 per cent of Eastern's capitalization came from the

[3] This Court notes that, for what its worth, Huntington National Bank has branch locations within the Fourth Circuit and within this District.

fraud scheme, both in money and in assets of heavy equipment. Lexington Real Estate is also 100 per cent owned by these defendants. The government's evidence will show that this company received capitalization from these defendants and from other companies used in the fraud scheme to funnel money from the 8(a) participants to the defendants. The fact that the companies *now* may be making money untainted by fraud is irrelevant. The Fourth Circuit has recognized that legitimate income received by a company started as part of a fraud scheme is all gross proceeds traceable to the fraud:

> Dr. Saoud argues that he should not have to forfeit all of his proceeds from AGS and CWVD because those practices provided, and appropriately received compensation for, dermatological services… We find Dr. Saoud's argument unpersuasive because § 982(a)(7) mandates forfeiture of "*gross proceeds* traceable to the commission of the offense." The term "gross proceeds" is properly interpreted to include the total amount of money brought in through the fraudulent activity, with no costs deducted or set-offs applied. Here, the government presented evidence that Dr. Saoud orchestrated a fraudulent scheme whereby he concealed his interests in AGS and CWVD in order to circumvent the terms of the settlement agreement. Every dollar that he received from these practices after his fraud began constitutes "gross

proceeds" traceable to that fraud. ***United States v. Saoud***, 595 F. App'x 182, 193 (4th Cir. 2014)(internal citations and quotations omitted).

"The term 'proceeds' includes any property obtained or retained as a consequence of the offense. In the case of a business that would not have been solvent but for the infusion of illegally-obtained funds, the entire business may be subject to forfeiture as the proceeds of the offense." ***United States v. Park***, 825 F. Supp. 2d 644, 647-48 (D. Md. 2011). *See, also,* ***United States v. Warshak****,* 631 F.3d 266, 329–330 (6th Cir. 2010) (proceeds of defendant's business, which was permeated with fraud, are forfeitable and if the legitimate side of the business would not have existed but for the "fraudulent beginnings," those proceeds are forfeitable); and, ***United States v. Farkas****,* 2011 WL 5101752 (E.D. Va. Oct. 26, 2011) (because business would not have been solvent but for fraud proceeds coming into the business, all property obtained from the business is subject to forfeiture, including money traceable to legitimate business activity).

Inasmuch as this Court cannot be aware what information was presented to the grand jury in this regard, this Court cannot accept the Government's later characterization of the assets. In the event that a hearing is required, the Government would have the burden of proving that the assets are in fact proceeds.

**Entitlement to a Farmer Hearing**

The defendants have requested a hearing under ***United States v. Farmer***, 274 F.3d 800 (4th Cir. 2001). In ***Farmer***, the Fourth Circuit stated that:

> The Supreme Court has made clear that a criminal defendant has no Sixth Amendment right to use illegally obtained funds to hire an attorney. In ***Caplin & Drysdale v. United States****,* 491 U.S. 617 (1989), the Court concluded that any Sixth Amendment right to obtain counsel of choice does not extend beyond the individual's right to spend his own legitimate, nonforfeitable assets. ***Caplin****,* 491 U.S. at 624–33. The Court explicitly rejected "any notion of a constitutional right to use the proceeds of crime to finance an expensive defense." ***Id****.* at 630. And the Court stressed that "there is a strong governmental interest in obtaining full recovery of all forfeitable assets, an interest that overrides any Sixth Amendment interest in permitting criminals to use assets adjudged forfeitable to pay for their defense." ***Id****.* at 631. Furthermore, in ***Caplin's*** companion case, the Court held that the pre-trial restraint of a criminal defendant's assets does not violate the Constitution as long as the assets are restrained based upon a finding of probable cause that they are subject to forfeiture. ***United States v. Monsanto****,* 491 U.S. 600, 615–16 (1989).

Despite the foregoing, the defendants are entitled to a hearing under ***Farmer***, if they can make a "substantial showing that some of the seized assets may be both legitimate and necessary to hire an attorney." Such a showing should be under oath and should

demonstrate that untainted assets have been restrained and that due to the restraint, the defendants are unable to retain the counsel of their choice. The defendant has the burden of showing that he lacks other funds with which to retain counsel; a bare-bones allegation that he has limited cash on hand and no income is not sufficient. The defendant must disclose his assets, liabilities, and sources of income and say how much he has already paid counsel and how much more he needs. And he must also show that he does not have access to funds from third parties, such as friends or family members.

This Court needs additional information from the defendants other than the bare bones allegations in their affidavits that they do not have sufficient funds to pay for their defense. In ***United States v. Varner***, 2005 WL 2206083, at *2 (W.D. Va. Sept. 9, 2005) (Wilson, J), the Court held that "[a]lthough Varner submitted an affidavit in support of his claim that he is unable to afford counsel without resort to the restrained assets, his affidavit is insufficient to discharge his burden to make a threshold showing that the amended protective order effectively precludes him from hiring counsel. Indeed, Varner's affidavit does not detail his assets and liabilities or provide a meaningful basis for the court to independently judge his assertion that he lacks the ability to retain counsel. Therefore, the court denies Varner's request for a hearing." *See also* ***United States v. Wingerter***, 369 F.Supp.2d 799 (E.D. Va. 2005).

This requirement is especially necessary in this case where the Government alleges (1) that it has entered into an agreement in principle to permit each of the moving defendants to receive a salary of $20,000 per month; (2) that during the first half of this year, Eastern has paid $ 549,310 to Marshall's benefit and $ 482,908 to Stover's benefit;

(3) that as recently as March of 2015, Marshall's wife had over $ 300,000 in unseized bank accounts and that Stover's wife and son had $ 165,181 in an unseized account in April; and (4) Records available to the Government show that Marshall's attorney has already been paid $ 278,351 and Stover's attorney has been paid $ 133,554.

Accordingly, the request for a hearing will be denied without prejudice.

For the reasons stated above, Defendant Stover and Marshal's (sic) Emergency Motion to Modify the Ex Parte Restraining Orders [**Doc. 32**] is **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: July 9, 2015.

**JOHN PRESTON BAILEY**
**UNITED STATES DISTRICT JUDGE**