**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                         Criminal Action No.: 5:15–CR–36-1 & 2
                                                                      (JUDGE BAILEY)

MICHAEL J. MARSHALL and
BRANDT STOVER,

        Defendants.

**REPORT AND RECOMMENDATION THAT THE DISTRICT COURT
VACATE PART OF ITS PREVIOUS ORDER BECAUSE A DECISION OF THE
SUPREME COURT OF THE UNITED STATES CHANGED THE APPLICABLE LAW
AND
ORDER GRANTING THE GOVERNMENT'S
MOTION TO SUPPLEMENT THE RECORD**

On March 30, 2016, Brandt Stover, by counsel, Kwame J. Manley, Esq., and Patricia V. Kutsch, Esq., filed a Motion to Vacate the Restraining Orders Against Substitute Assets in this matter. ECF No. 106. The next day, March 31, 2016, Michael J. Marshall, by counsel, William E. Lawler, III, Esq., and Scott C. Brown, Esq., filed a Motion to Adopt Defendant Stover's Motion. ECF No. 107. This Court granted Defendant Marshall's Motion to Adopt and set this matter for an evidentiary hearing and oral argument on May 10, 2016. ECF Nos. 110 & 113. The hearing was continued at the request of the United States of America ("the Government") because its witnesses were unavailable for the scheduled date. The Government filed its Response on April 19, 2016. ECF No. 115. This Court held an evidentiary hearing and oral argument on the Motion on Monday, May 16, 2016. The Government was represented by Assistant United States Attorney ("AUSA") Robert H. McWilliams, Jr., Esq., and AUSA L. Denae DeMasi-Lemon, Esq. Attorneys for each of the defendants named in the Indictment were present, but Mr. Manley argued the Motion on behalf of defendants Stover and Marshall.

## I. FINDINGS OF FACT

On June 2, 2015, the Government filed a multiple-count Indictment naming Michael J. Marshall, Brandt Stover, Stephen M. Powell, and Nicole P. Northcraft as defendants in an alleged scheme to defraud the Government. ECF No. 1. This is a complex white collar prosecution in which the Government has given defendants "at least 179 gigabytes of data" in discovery, which is between 5,300,000 and 19,450,000 pages, and it alleges that the defendants illegally procured over $140,000,000 in contract payments from the Government. ECF No. 125, Def. Ex. 8 at 1; *See* ECF No. 1 at 15. The shear volume of documents that must be reviewed in this matter will require Defendants' attorneys and their firms to spend a significant amount of time and expense to complete.

The Indictment includes forfeiture allegations. *See* ECF No. 1 at 25–28. Specifically, the Government named sixteen different bank accounts ("BA") and seventeen individual pieces of equipment ("EQ"). *Id.*

One of the Government's witnesses, Kenneth S. Maupin, a Department of Defense ("DOD") contractor who specializes in asset forfeiture, testified before the Grand Jury as follows:

> [The Government]    Q: And can you tell us to what extent these bank accounts are what we call direct tracing of proceeds for our substitute assets?
>
> [Mr. Maupin]    A: There's only one bank account that is direct tracing, which is BA11 that is through direct tracing.
>
> Q: And is this where you're able to follow the pension plan of Marshall's wife, who never worked for N-Powell, and see where they liquidated it and you follow that trail?
>
> A: Yes.
>
> Q: Now, without having to go over all these individually, each one contains a name of an account, the location of it, and enough bank account numbers to identify for the bank's purpose where the accounts are. Are those accurate as far as you can tell?

A: Yes.

Q: So, all of these are supported by numerous grand jury subpoenas and other records?

A: Yes.

Q: And since they're substitute assets, I don't need to talk about tracing them, but would you explain on BA11 in general terms how you traced the money from N-Powell's retirement plan for Marshall's wife into this brokerage account?

A: Well, what we did was, we traced the money backwards. We saw that there was this Hillard Lyons brokerage account in her name alone. We knew from tax records and other information that she didn't appear. To be employed and she did not appear to be – received any inheritance. So, in following it back, we followed it back to the N-Powell 401(k) - sponsored retirement account at MG Trust. When we followed it back there, at the same time, we saw W-2 wage documents in the federal tax returns where she and Mrs. Stover appeared to be employees of those companies because they were getting a W-2 as if they were a regular employee.

. . .

Q: Okay. So, you're very comfortable that for BA11, those funds can be traced directly to the pension plan that eventually was liquidated, but represented the money - -

A: Right.

Q: - - that N-Powell was putting aside for Marshall's wife?

A: Yes. We did get the records from MG Trust, which showed the disbursement to MG Trust with the name of Janet Marshall on it. And this was done in February of 2013. There was a disbursement of $113,348.71 and a disbursement - these were actual checks - of $15,107.99 from MG Trust to Hillard Lyons with the name of Janet Marshall on there, and those are the ones that went into the Hillard Lyons account that is BA11.

Q: Thank you.

3

ECF No. 125: Def. Ex. 1 at 3–5.

On June 4, 2015, the Government filed an *Ex Parte* Application for Post-Indictment Restraining Order. ECF No. 7. The Government attached an affidavit of Special Agent Jennifer Jezewski, who has worked for the DOD's, Office of Inspector General, Defense Criminal Investigative Service since 2007. ECF No. 7-2 at 1. In Special Agent Jezewski's affidavit, she stated, "[t]he below financial accounts were not part of direct tracing to proceeds.[1] These Financial Accounts are subject to substituted assets for the property subject to forfeiture under the forfeiture money judgement in the amount of at least $24,000,000, as set forth in the forfeiture allegations in the indictment." *Id.* at 15.

On the same day the Government filed its application, the District Court entered Orders granting the same and restraining various assets belonging to the Defendants and businesses under their ownership and/or control. ECF Nos. 8 & 12.

On July 15, 2015, a Memorandum of Understanding ("MOU") was entered between Michael J. Marshall, Brandt Stover, and the United States Marshals Service. ECF No. 125: Gov. Ex. 1. The District Court's Order on June 4, 2016, ordered that

> the United States Marshals Service ("USMS") or its' designee, shall, as it deems necessary to preserve the availability and value of the business and their assets: . . . (5) appoint a manager for the business. The manager shall enter into a Memorandum of Understanding ("MOU") with the USMS that details specific duties and obligations. Nothing in the Order or the MOU shall provide any legal, right, title or interest in the property. The USMS has the right to remove and replace this manager for any reason, including but not limited to, violation of the MOU or the Order.

ECF No. 8 at 6. Further, the MOU contained a provision under "Up Front Payment" that "the USMS will authorize the Business to make a one-time distribution payment of $150,000 to MARSHALL and

---

[1] The Court notes that all sixteen bank accounts, including BA11, are listed below in Special Agent Jezewski's affidavit. The undersigned believes that BA11's inclusion on this list was an oversight because the affiant asserted that BA11 is directly traceable on the next page.

4

a one-time distribution payment of $150,000 to STOVER." ECF No. 125: Gov. Ex. 1 at 2.

On March 30, 2016, The Supreme Court of the United States decided *Luis v. United States*, 136 S. Ct. 1083 (2016). The petitioner in *Luis* asked the Court if "pretrial restraint of a criminal defendant's legitimate, untainted assets . . . needed to retain counsel of choice violates the Fifth and Sixth Amendments." *Luis v. United States*, 136 S. Ct. 1083, 1088 (2016) (quoting Pet. for Cert. ii.). The Supreme Court stated, "our answer is that the pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment." *Luis*, 136 S. Ct. at 1088. The Fourth Circuit is the only circuit that holds pre-conviction restraint of untainted, substitute assets[2] is permissible. *See In re Billman*, 915 F.2d 916 (4th Cir. 1990) *cert. denied*, *McKinney v. U.S.*, 500 U.S. 952 (1991); *but see United States v. Gotti*, 155 F.3d 144, 149 (2d Cir. 1998), *In re Assets of Martin*, 1 F.3d 1351 (3d Cir. 1993), *United States v. Floyd*, 992 F.2d 498 (5th Cir. 1993), *United States v. Ford*, 64 F. App'x 976 (6th Cir. 2003), *United States v. Field*, 62 F.3d 246 (8th Cir. 1995), *United States v. Ripinsky*, 20 F.3d 359 (9th Cir. 1994), *United States v. Jarvis*, 499 F.3d 1196 (10th Cir. 2007).

## II. DISCUSSION

The Supreme Court's decision in *Luis* represents a sea change in the law. The Court's plurality held that pretrial restraint of untainted assets violates a defendant's Sixth Amendment right to counsel of choice.

As described more fully above, the Government, through its filings and witnesses, prior to the Defendants' instant Motion, alleged BA11 was the only tainted asset that could be directly traced to the

---

[2] "If tracing the directly forfeitable asset is impossible, the government may seek forfeiture of other property as a substitute asset. If the forfeitable assets are unavailable at the time of conviction, the court may enter an order forfeiting substitute assets up to an equivalent value. In seeking forfeiture of substitute property, the government must show that the directly forfeitable property is unavailable due to an act or omission of the defendant." Heather J. Garretson, *Federal Criminal Forfeiture: A Royal Pain in the Assets*, 18 S. Cal. Rev. L. & Soc. Just. 45, 52–53 (2008) (citations omitted).

5

alleged criminal enterprise. In fact, the Government's Response to Defendants' Motion, regarding BA1 through BA6, explicitly states that "[although] the United States previously took the position that these accounts were substitute assets, *that position was in error.*" ECF No. 115 at 4 (emphasis added). The Government further contends that "merely because the United States took an erroneous position a year ago when it obtained the original restraining orders does not prohibit it from now correctly pointing to law and facts which [sic] clearly establish these accounts as illegal proceeds." *Id.* During its argument to this Court, the Government said, "[a]s far as Analyst Maupin's statement in the grand jury, Special Agent Jezewski's statement in the restraining order affidavit, that was based on incorrect legal advice from me, Your Honor." ECF No. 133 at 42–43. The Government asserted that the underlying "facts have not changed"; however, the Government's understanding of forfeiture law "has changed abundantly." *Id.* at 43. Although it appreciates the candor of Government's counsel, this Court can not agree with the Government's position.

The Government presented the Grand Jury and District Court with witnesses, affidavits, documents, and arguments alleging that only one account, BA11, was directly traceable. Now, the Supreme Court has decided a case that changes what monies are available to the Defendants in this case, and, in the eleventh hour, the Government wishes to change its position. On the one hand, even if the undersigned were inclined to give the Government its change of position, it has still failed to demonstrate, with the same level of detail and explanation to the Grand Jury and District Court, that any of the other accounts are directly traceable to the alleged criminal enterprise. On the other hand, Defendants have made a strong argument, supported by numerous exhibits submitted at the hearing, that there is a sizeable amount of money being restrained that cannot be directly traced to the alleged criminal activity. Defendants explain the source of the overwhelming majority of these funds was a private contractor in the oil and gas business in no way connected to any contracts with the United

6

States Government, which is the subject of the criminal action. In its Response, the Government presently does not contest that BA7 and BA 12 through BA16 are purely substitute assets. ECF No. 115 at 7. The undersigned is of the opinion that the Government has only met its burden, regarding direct tracing and showing any asset is indeed tainted, with regard to BA11. Further, it appears to the undersigned that the funds in dispute have absolutely no connection to the criminal action.

The Government's argument about the MOU is not persuasive. The Government's Response indicates to the Court that the Defendants are being paid salaries by their businesses, that they are currently operating, pursuant to the MOU and provides estimates on what Defendants have paid their attorneys; this is not relevant to the issue before the Court. The Court can find nothing in the MOU that would prohibit this Court's recommendation below. However, even if there were a pertinent provision within the MOU, the Supreme Court's decision in *Luis* would nonetheless supercede it.

### III. MOTION TO SUPPLEMENT THE RECORD

On May 18, 2016, the Government filed a Motion to Supplement the Record. ECF No. 126. On or about the same day, Mr. Manley telephoned the Court and advised that Defendants had no objections to the Motion. Accordingly, the Court **GRANTS** the Government's [ECF No. 126] Motion. The Court Reviewed the Motion, and the attachment, and considered the same in making its determination herein.

### IV. RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that Defendants' [ECF No. 106] Motion to Vacate be **GRANTED**, and that the District Court **VACATE** part of its Order to release the accounts listed in Defendants' Motion, in accordance with *Luis*, so Defendants may enjoy their Sixth Amendment right to use those untainted assets in support of their defense–in what has been repeatedly described to the undersigned as the largest white collar prosecution in the Northern District of West

Virginia.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record.

Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

**Dated**: June 17, 2016                                       /s/ *James E. Seibert*
                                                               JAMES E. SEIBERT
                                                               U.S. MAGISTRATE JUDGE