**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling**

**UNITED STATES OF AMERICA**,

        Plaintiff,

    v.                                **Criminal No. 5:15-CR-36**
                                          Judge Bailey

**MICHAEL J. MARSHALL**,
**BRANDT STOVER**, and
**NICHOLE P. NORTHCRAFT**,

        Defendants.

## ORDER DENYING DEFENDANT BRANDT STOVER'S MOTION TO DISMISS COUNTS 1 AND 2 OF THE INDICTMENT FOR IMPROPERLY ALLEGING MULTIPLE CONSPIRACIES

Pending before this Court is Defendant Brandt Stover's Motion to Dismiss Counts 1 and 2 of the Indictment for Improperly Alleging Multiple Conspiracies [Doc. 166]. On November 7, 2016, [Doc. 172], this Court granted defendant Michael Marshall's motion to adopt the pending Motion [Doc. 168]. On November 3, 2016, the Government filed its response to the motion [Doc. 171].

In the Motion, the Moving Defendants contend that Counts 1 and 2 are defective as a matter of law because they allege an improper "rimless wheel" conspiracy in which multiple and distinct conspiracies are charged as a single offense. The Supreme Court has held that such "rimless wheel" conspiracies are defective and fatally flawed, citing ***Kotteakos v. United States***, 328 U.S. 750, 755 (1946); ***Dickson v. Microsoft Corp.***, 309 F.3d 193, 203-04 (4th Cir. 2002) (affirming dismissal of rimless wheel conspiracy).

1

Count 1 of the Indictment, including the Introduction, charges as follows:

A description of the programs

1.   Sections 8(a) and 7(j) of the Small Business Act authorize a minority Small Business and Capital Ownership Development program ("BD"). The purpose of the 8(a) BD program is to assist eligible small disadvantaged business concerns compete in the American economy through business development [13 CFR § 124.1].

2.   A participant receives a program term of nine years from the date of the Small Business Administration's (SBA) approval letter certifying the concern's admission to the program. The participant must maintain its program eligibility during its tenure in the program and must inform SBA of any changes that would adversely affect its program eligibility. A firm that completes its nine year term of participation in the 8(a) BD program is deemed to graduate from the program [13 CFR § 124.2].

3.   To be eligible for the 8(a) BD program, the concern must be a small business which is unconditionally owned and controlled by one or more socially and economically disadvantaged individuals who are of good character and citizens of the United States, and which demonstrates potential for success [13 CFR § 124.101].

a.   "*Unconditional ownership*" means ownership that is not subject to conditions precedent, conditions subsequent, executor agreements, voting trusts, restrictions on or assignments of voting rights, or other arrangements causing or potentially causing ownership benefits to go to another [13 CFR

§ 124.3].

b.      As defined by the SBA, control of a business concern includes both the strategic policy setting exercised by boards of directors and the day-to-day management and administration of business operations. An 8(a) BD program applicant or participant's management and daily business operations must be conducted by one or more disadvantaged individuals [13 CFR § 124.106]. An applicant or participant must be managed on a full-time basis by one or more disadvantaged individuals who possess requisite management capabilities [13 CFR 124.106(a)(1)]. One or more disadvantaged individuals who manage the applicant or participant must devote full-time to the business during the normal working hours of firms in the same or similar line of business [13 CFR 124.106(a)(3)].

c.      Non-disadvantaged individuals may be involved in the management of an applicant or participant, and may be partners and officers of the applicant or participant. However, no such non-disadvantaged individual may exercise control or have the power to exercise control of the applicant or participant [13 CFR § 106(e)(1)].

d.      Non-disadvantaged individuals or entities may be found to control or have the power to control in circumstances where, for example, a non-disadvantaged individual or entity, having an equity interest in the applicant or participant, provides critical financial or bonding support which directly or indirectly allows the non-disadvantaged individual significantly to influence business decisions of the participant [13 CFR § 124.106(g)(2)]; or, where

3

business relationships exist with non-disadvantaged individuals or entities which cause such dependence that the applicant or participant cannot exercise independent business judgment without great economic risk [13 CFR §124.106(g)(4)].

4. There is a rebuttable presumption that Black Americans are socially disadvantaged [13 CFR § 124.103(b)(1)].

5. A participant must be at least 51 percent owned by one or more socially and economically disadvantaged individuals who are citizens of the United States [13 CFR § 124.105].

6. As part of an annual review, each participant must annually submit to the servicing district office, among other things, a record of all payments, compensation, and distributions made by the participant to each of its owners, officers or directors, or to any person or entity affiliated with such individuals [13 CFR § 124.112(b)(5)].

7. An individual may not use his or her disadvantaged status to qualify a concern if that individual has an immediate family member who is using or has used his or her disadvantaged status to qualify another concern for the 8(a) BD program. The AA/BD may waive this prohibition if the two concerns have no connections, either in the form of ownership, control or contractual relationships, and provided the individual seeking to qualify the second concern has management and technical experience in the industry. Where the concern seeking a waiver is in the same or similar line of business as the current or former 8(a) concern, there is a presumption against granting the

waiver. The applicant must provide clear and compelling evidence that no connection exists between the two firms [13 C.F.R. § 124.105].

8.  Each participant must submit annually a written report to its assigned Business Opportunity Specialist (BOS) that includes a listing of any agents, representatives, attorneys, accountants, consultants and other parties (other than employees) receiving fees or compensation of any kind to assist such participant in obtaining a federal contract [13 CFR § 124.601(a)].

9.  The United States has a program to provide preferential contract awards to service-disabled veterans who enter into the Service-Disabled Veteran Owned Small Business Concern (SDVO SBC) Program. To be an eligible SDVO SBC, the management and daily business operations of the concern must be controlled by one or more service-disabled veterans (or in the case of a veteran with permanent and severe disability, the spouse or permanent caregiver of such veteran) [13 C.F.R. § 125.10]. A permanent caregiver is the spouse, or an individual, 18 years of age or older, who is legally designated, in writing, to undertake responsibility for managing the well-being of the service-disabled veteran with a permanent and severe disability, to include housing, health and safety [13 C.F.R. § 125.8(c)].

<u>The defendants involved with participants (companies) in the programs</u>

10.  At times relevant and material to this Indictment, defendant **MICHAEL J. MARSHALL** was the accountant, attorney and inside office manager for several participants described in this Indictment, which submitted materially

5

false eligibility statements to acquire and maintain participation in the 8(a) BD program and the SDVO SBC program, and he exercised control and had the power to exercise control over the participants to an extent not permitted by those programs.

11. At times relevant and material to this Indictment, defendant **BRANDT STOVER** was the general manager for several participants described in this Indictment, which submitted materially false eligibility statements to acquire and maintain participation in the 8(a) BD program and the SDVO SBC program, and he exercised control and had the power to exercise control over the participants to an extent not permitted by those programs.

12. At times relevant and material to this Indictment, defendant **STEPHEN M. POWELL** exercised control and had the power to exercise control over the participants described in this Indictment to an extent not permitted by those programs.

13. At times relevant and material to this Indictment, defendant **NICHOLE P. NORTHCRAFT** was part owner and owner of N-Powell Company, Inc. (NPC). She submitted materially false eligibility statements to acquire and maintain participation in the 8(a) BD program for NPC, and she did not exercise control over NPC to the extent required by the 8(a) BD program.

<u>The participants involved with the programs</u>

14. At times relevant and material to this Indictment, Braun Enterprises, Inc. (BEI) was in the 8(a) BD program, but defendant **MICHAEL J.**

**MARSHALL** and defendant **BRANDT STOVER** exercised controlled of BEI to an extent not permitted by that program.

15. At times relevant and material to this Indictment, NPC was in the 8(a) BD program, but its disadvantaged owner did not exercise control over NPC to the extent required by the 8(a) BD program.

16. At times relevant and material to this Indictment, Rainbow Tech, Inc. (RBT) was in the 8(a) BD program, but materially false statements were made in the RBT application to enter into and to remain in the program, and the disadvantaged owner did not exercise control over RBT to the extent required by the 8(a) BD program.

17. At times relevant and material to this Indictment, Braun Technology Solutions (BTS) was in the SDVO SBC program, but materially false statements were made in the BTS application to enter into and to remain in the program, and neither the disadvantaged veteran owner nor the permanent caregiver of such veteran exercised control over BTS to the extent required by the SDVO SBC program.

18. At times relevant and material to this indictment, The Thomas Company, also known as Thomco, Inc., was a company set up to become a participant in the SBA 8(a) BD program.

19. At times relevant and material to this indictment, Skyline Contracting, Inc. was a company set up to become a participant in the SDVO BD program as a successor company to BTS.

## Companies used by Marshall, Stover and Powell to obtain money from the participants

At times relevant and material to this indictment:

20. Defendants **MICHAEL J. MARSHALL**, **BRANDT STOVER** and **STEPHEN M. POWELL** were prohibited by the rules of the BD programs from making more money than the owners of the participants. To circumvent these rules, they used other companies controlled by them to obtain money from the participants described in this Indictment.

21. SPC was a company used primarily by defendants **MICHAEL J. MARSHALL**, **BRANDT STOVER** and **STEPHEN M. POWELL** to obtain money from the participants described in this Indictment.

22. RST Excavating ("RST") was a company used primarily by defendant **MICHAEL J. MARSHALL** and defendant **BRANDT STOVER** to obtain money from the participants described in this Indictment.

23. LRE Equipment was a company used primarily by defendant **MICHAEL J. MARSHALL** and defendant **BRANDT STOVER** to obtain money from the participants described in this Indictment.

24. Eastern Construction & Excavating Equipment was a company used primarily by defendant **MICHAEL J. MARSHALL** and defendant **BRANDT STOVER** to obtain money from the participants described in this Indictment.

25. BSM Real Estate, LLC was a company used primarily by defendants **MICHAEL J. MARSHALL**, defendant **BRANDT STOVER** and defendant **STEPHEN M. POWELL** to purchase real estate with money obtained from

the participants described in this Indictment.

26. Lexington Real Estate LLC was a company used primarily by defendants **MICHAEL J. MARSHALL** and defendant **BRANDT STOVER** to purchase real estate with money obtained from the participants described in this Indictment.

Count 1

(Conspiracy to defraud the United States in relation to the 8(a) BD program and the Service-Disabled Veteran-Owned Small Business Concern Program)

Introduction

The Introduction to this Indictment is incorporated by reference.

The conspiracy

Beginning in or about February 2003 and continuing until in or about October 2014 in Weirton, Hancock County, in the Northern District of West Virginia and elsewhere, the defendants **MICHAEL J. MARSHALL, BRANDT STOVER**, **STEPHEN M. POWELL** and **NICHOLE P. NORTHCRAFT** conspired with each other and with other persons known and unknown to the Grand Jury to defraud the United States and its agencies, to include among others, the Department of Defense, the Small Business Administration and the Department of Veterans Affairs, in a manner in which they violated the regulations for the participants described in this Indictment to enter into and to remain in the 8(a) BD and SDVO SBC programs for the purpose and object of unlawfully obtaining money from federal agency contracts awarded

to these program participants described in the Indictment and committed the following overt acts to effect the object of the conspiracy:

Overt Acts

1. On or about February 2, 2003, defendants **MICHAEL J. MARSHALL** and **BRANDT STOVER** signed employment contracts with BEI;

2. In or about July 2004, defendants **MICHAEL J. MARSHALL** and **BRANDT STOVER** caused defendant **NICHOLE P. NORTHCRAFT** to submit an application to the SBA containing materially false statements in order to be admitted into the 8(a) program;

3. On or about February 23, 2005, defendants **MICHAEL J. MARSHALL, BRANDT STOVER** and **STEPHEN M. POWELL** caused RBT to submit an application to the SBA containing materially false statements in order to be admitted into the 8(a) program;

4. In or about the summer of 2005, the defendants **MICHAEL J. MARSHALL, BRANDT STOVER** and **STEPHEN M. POWELL** treated BEI and NPC as one company by planning to shift work from BEI to NPC;

5. In or about the fall of 2005 the defendants **MICHAEL J. MARSHALL, BRANDT STOVER** and **STEPHEN M. POWELL** discussed keeping NPC below monetary amounts that would cause NPC and defendant **NICHOLE P. NORTHCRAFT** to become ineligible for the 8(a) program;

6. Sometime in 2006, the defendants **MICHAEL J. MARSHALL, BRANDT STOVER** and **STEPHEN M. POWELL** approached a relative of

defendant **STEPHEN POWELL** to form an electrical company for this relative to become another 8(a) construction company called The Thomas Company, also known as Thomco, Inc., even though this relative had no electrical or contracting experience;

7. On or about May 19, 2006, defendant **MICHAEL J. MARSHALL** told a bonding company that the owner of BEI was a non-contributing owner and that defendant **MICHAEL J. MARSHALL** could juggle certain overhead items from one company to another;

8. On or about November 30, 2006, defendants **MICHAEL J. MARSHALL** and **BRANDT STOVER** discussed the formation of an SDVO SBC with a veteran as a figurehead;

9. On or about August 1, 2007, defendant **MICHAEL J. MARSHALL** incorporated BTS;

10. On or about January 2, 2008, defendant **BRANDT STOVER** entered into a working agreement with the veteran disabled president of BTS, which indicated the president will "not maintain any active role in the business other than as an advisor" and appointed a representative who did not meet the SDVO SBC program's requirement that the representative be a spouse or permanent caregiver of such veteran;

11. On or about February 19, 2008, defendant **MICHAEL J. MARSHALL** advised a bonding company that the president of BTS was formerly a truck driver but consideration was being given to making this company specialize

in heating, ventilation and air conditioning work;

12. On or about April 29, 2008, defendant **NICHOLE P. NORTHCRAFT** emailed defendants **MICHAEL J. MARSHALL, BRANDT STOVER** and **STEPHEN M. POWELL** telling them the SBA was making a site visit to NPC and to make sure all BTS and RBT materials were put away;

13. In or about 2009, after the General Accountability Office visited the offices of the defendants **MICHAEL J. MARSHALL, BRANDT STOVER, STEPHEN M. POWELL** and **NICHOLE P. NORTHCRAFT**, they agreed that they had to make it appear the companies were operating separately;

14. On or about November 19, 2009, defendant **NICHOLE P. NORTHCRAFT** made materially false statements when she filed NPC's 8(a) annual update with the SBA;

15. On or about May 4, 2010, defendant **MICHAEL J. MARSHALL** advised a bonding company that they were in the process of establishing another 8(a) company to be run by another relative of defendants **STEPHEN M. POWELL** and **NICHOLE P. NORTHCRAFT**;

16. On or about September 1, 2010, defendants **STEPHEN M. POWELL** and **NICHOLE P. NORTHCRAFT** gave their personal financial guarantees to Skyline Contracting, Inc., a company which defendant **MICHAEL J. MARSHALL** formed to replace BTS;

17. On or about September 21, 2011, defendants **MICHAEL J. MARSHALL** and **BRANDT STOVER** told defendants **STEPHEN M.**

**POWELL** and **NICHOLE P. NORTHCRAFT** that they had taken $750,000 from defendant **STEPHEN M. POWELL** to help NPC financially and they would find a way to pay back defendant **STEPHEN M. POWELL**;

18. Counts Two through Five involving wire fraud are incorporated by reference;

19. Counts Six and Seven involving the Department of Veterans Affairs fraud are incorporated by reference;

20. Counts Eight, Nine, Ten and Eleven involving the Department of the Navy fraud are incorporated by reference;

21. And other overt acts.

IN VIOLATION OF TITLE 18, UNITED STATES CODE, SECTION 371

Count 2 of the Indictment charges as follows:

Count 2

(Attempt and conspiracy to commit wire fraud)

<u>The attempt and conspiracy</u>

Beginning in or about February 2003 and continuing until in or about October 2014 in Weirton, Hancock County, in the Northern District of West Virginia and elsewhere, the defendants **MICHAEL J. MARSHALL, BRANDT STOVER**, **STEPHEN M. POWELL** and **NICHOLE P. NORTHCRAFT** attempted and conspired and knowingly entered into an agreement with each other and with other persons known and unknown to the Grand Jury with intent to commit fraud in violation of the wire fraud statute, 18 U.S.C. §1343;

that is to say, they knowingly devised and intended to devise a scheme to defraud, and for obtaining money by means of materially false and fraudulent pretenses, representations, and promises to obtain payments from the United States and its agencies through the fraudulent use of wires in a manner and means more fully set forth below:

Manner, means and overt acts of the attempt and conspiracy

1. The Introduction to this Indictment and the overt acts of Count 1 are incorporated by reference. These acts and other overt acts were used to further the scheme through the use of interstate wire communications.

2. During the course of the conspiracy, the defendants caused interstate wires to be transmitted electronically in the ordinary course of the business of the participants described in this Indictment to fraudulently seek and receive over $140,000,000 from the United States and its agencies for payments from federal agency contracts, which had been awarded to the participants described in this Indictment.

3. During the course of the conspiracy, the defendants caused requests for payments to be entered via the internet in Weirton, West Virginia, or Steubenville, Ohio, onto servers located outside of those two states.

4. During the course of the conspiracy, the defendants caused payments from agencies located outside of those two states to be wired to one or more banks in Ohio.

5. At times during the course of the conspiracy, after payments were received, the defendants caused entries reflecting the receipt of these

> payments to be made via the internet from Ohio into accounting records on a server of NPC located in Weirton, West Virginia.
>
> 6. During the course of the conspiracy, the defendants caused forms containing materially false statements to be submitted via the internet from Ohio and Weirton, West Virginia, to locations outside those two states to initially obtain, and then later to update, the eligibility of the participants described in this Indictment to enter into and to remain in the programs that gave them preferential treatment in the awarding of federal agency contracts.
>
> IN VIOLATION OF TITLE 18, UNITED STATES CODE, SECTION 1349

The Motion is based, at least in part, on a misreading of the two counts. While defendants contend that the owners of all of the businesses listed in the counts are alleged to be co-conspirators, in fact the indictment alleges that the now three defendants used each of the businesses in furtherance of their conspiracy. Upon a realization of that distinction, the arguments of the defendants fail. The attacked counts are, on their face, valid.

Any assault beyond the actual allegations of the Indictment may not be considered at this time. To the extent that the resolution of an issue involves factual issues and depends upon the evidence, there can be no pretrial decision. ***United States v. Engle***, 676 F.3d 405, 415 (4th Cir. 2012) ("[A] court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial"). As pointed out by the Government, not one case cited in the defendant's brief involved the pre-trial dismissal of a validly worded indictment.

For the reasons stated above, Defendant Brandt Stover's Motion to Dismiss Counts 1 and 2 of the Indictment for Improperly Alleging Multiple Conspiracies [**Doc. 166**] is **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: January 30, 2017.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE